**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

JAMES ARCHANGEL               CIVIL ACTION NO. 10-CV-1808
SSN: xxx-xx-8475

VERSUS                           JUDGE DOHERTY

MICHAEL J. ASTRUE,           MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable
law, it is recommended that the determination be affirmed.

### Background and Commissioner's Findings

James Archangel is 47 years old.  He has a high school education, some
technical school training, and he has served four years in the military.  He has
worked in the past as a mechanic, cook's helper, loader for an airline, a
janitor/cleaner, and a truck driver/delivery person. [Tr. 127]  He states he has no
problems reading and writing.  He alleges that he has been disabled since
December 18, 2001, due to mental and physical problems, including "back
problem, hearing loss, depression, alcoholism." [Tr. Rec. 53-55, 70-71, 126]   He
filed applications for disability insurance benefits and supplemental security
income benefits beginning in April, 2003.

After a hearing on Archangel's claims,  a decision was issued by the Administrative Law Judge on March 24, 2005, denying the claim. [Tr. 73] Archangel sought review of that decision in the Appeals Council, and, by Order of May 27, 2005, the ALJ decision was vacated and the case was remanded with instructions for further action, including a supplemental hearing. [Tr. Rec. 14, 89]

A second hearing was held on May 2, 2007 at which Archangel appeared and testified.[1]  On June 29, 2007, a second decision was issued by the Administrative Law Judge, again denying the claim.  Archangel again sought review of the decision in the Appeals Council, and, by Order on November 5, 2008, the second ALJ decision was vacated. [Tr. 14]  Another supplemental hearing was ordered which occurred on September 1, 2009. [Tr. 670] Archangel was unrepresented(though he had been represented at earlier stages of the process), but he appeared and gave testimony at the third hearing. [Tr.  670]

On January 11, 2010, Administrative Law Judge Ronald L. Burton rendered his decision on Archangel's claim. [Tr. 14-25]  The ALJ identified the issue before him as whether the claimant is disabled under Titles II and/or XVI of the Social Security Act.  After considering all of the evidence, including the testimony of the

---

[1]Transcripts or other recordings of prior hearings are not in the administrative record, having been "lost" per the ALJ. [Tr. 672]

claimant, the ALJ concluded that "the claimant was disabled up to February, 2006, but that a substance use disorder is a contributing factor material to that disability. Subsequent to February 2006 the claimant was not disabled." [Tr. 15] The decision further explained:

> **Public Law 104-121** mandates that persons disabled when a substance addiction disorder is material cannot receive disability benefits under Titles II or XVI of the Social Security Act.  Therefore although the claimant was disabled up to February 2006, he is not entitled to receive benefits under the Act for that period.  Accordingly the claimant has not been eligible for benefits under the Social Security Act at any time through the date of this decision. [Tr.15]

The ALJ found that as of February, 2006, Archangel retained the ability to perform work with the following restrictions: lifting and carrying up to 25 pounds frequently and 50 pounds occasionally; standing, walking, or sitting at least 6 hours per 8-hour work day; no more than occasional bending, stooping or crouching; and no work "in bars, lounges, or other environments where alcoholic beverages are either served or sold." [Tr. 23] The ALJ found that while these restrictions would preclude Archangel from performing his past work, he could perform other work existing in significant numbers in the national economy, as shown by Medical-Vocational Guidelines rule 202.21. [Tr. 24]

The Appeals Council denied Archangel's request for review of the decision on October 22, 2010, making the ALJ decision the Commissioner's final

-3-

administrative decision. [Tr. 7-9]  On December 6, 2010, James Archangel filed the instant appeal seeking judicial review of the ALJ decision pursuant to 42 U.S.C. §405(g). [Rec. Doc. 1]

## ASSIGNMENT OF ERRORS

Archangel asserts that the ALJ's decision is not supported by substantial evidence because the ALJ did  not consider his non-exertional impairments.  [Rec. Doc. 9, p. 3] Also, the ALJ improperly found vocational expert testimony to be unnecessary in the instant case(although VE testimony was presented at the hearing and referenced by the ALJ in the determination).  There is no challenge to the ALJ's determination regarding Archangel's alcohol and drug abuse during the time period before February, 2006.

## APPLICABLE  LEGAL STANDARDS  AND  SCOPE OF REVIEW

The district court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision.  *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible, and any findings of fact by the Commissioner that are supported by

-4-

substantial evidence are conclusive and must be affirmed.  *Perez v. Barnhart*, 415

F.3d 457, 461(5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

‘Substantial evidence’ is such relevant evidence as a responsible mind might

accept to support a conclusion; it is more than a mere scintilla and less than a

preponderance. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th

Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible

evidentiary choices or medical findings support the decision.  *Boyd v. Apfel,* 239 F.3d

at 704.  Finding substantial evidence does not involve a search of the record for

isolated bits of evidence that support the Commissioner's decision; instead, the entire

record must be scrutinized as a whole.  *Singletary v. Bowen*, 798 F.2d at 823. In

applying this standard, the court may not re-weigh the evidence in the record, try the

issues *de novo*,  or substitute its judgment for that of the Commissioner, even if the

evidence weighs against the Commissioner's decision.  *Boyd v. Apfel,* 239 F.3d at

704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir.

2000).  To determine whether the decision to deny social security benefits is

supported by substantial evidence, the court weighs the following factors: (1)

objective medical facts; (2) diagnoses and opinions from treating and examining

physicians; (3) plaintiff's subjective evidence of pain and disability, and any

corroboration by family and neighbors; and (4) plaintiff's age, educational

background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174(5th Cir. 1995).  Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court. *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.  20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a claim for disability benefits in the third step, the medical evidence

of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. *Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967(1990).  If the claimant is not actually working and his impairments match or are equivalent to one of the listed impairments, the Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It is the claimant's burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.*  Ultimately, the question of equivalence is an issue  reserved for the Commissioner. *Spellman v. Shalala*, 1 F.3d 357, 364(5th Cir. 1993).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). The claimant's residual functional capacity assessment is a determination of the most the claimant

-7-

can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 CFR § 404.1520(e).  When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of performing any other work.  *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520.  The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Fields v. Bowen*, 805 F.2d 1168, 1170(5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform  other substantial work in the national economy.   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

When a mental disability claim is made, such as bipolar disorder or major depressive disorder, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim.   Essentially, this procedure  substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings.  The regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, §404.1520(a)(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments. *Satterwhite v. Barnhart*, 44 Fed. Appx. 652(5th Cir. 2002)(unpublished).

*The Effect of Drug/Alcohol Abuse on the Analysis:*

In 1996, Congress eliminated drug and alcohol dependency as criteria for awarding disability benefits.  Drug abuse and alcoholism are no longer considered disabling, regardless of how much those impairments interfere with an individual's ability to function.  Specifically, the rule provides:

> An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would(but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. §423(d)(2)(C).

-9-

On considering the disability claim of an individual who abuses drugs or alcohol, the agency or the reviewing court must determine whether the claimant is disabled, using all the rules of determining disability that apply to all claimants. 20 CFR §§404.1535(a), 416.935(a).  Next, the agency(and court) must determine whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 CFR §§404.1535(b)(1), 416.935(b)(1).  If the claimant would remain disabled if he stopped using alcohol or drugs, he would be found eligible for benefits. 20 CFR §§404.1535(b)(2)(ii), 416.935(b)(2)(ii).  However, if the claimant would not remain disabled if he stopped using drugs or alcohol, he will be found ineligible for benefits. 20 CFR §§404.1535(b)(2)(I), 416.935(b)(2)(i).

Courts have held that the burden is upon the claimant to show that he would be disabled even if he stopped abusing drugs or alcohol, and the Fifth Circuit holds that  a claimant who uses drugs or alcohol has the burden of proving that his drug or alcohol problem is not "material" to his disability, i.e., that he would still be disabled even if he stopped  using drugs or alcohol. *Brown v. Apfel*, 192 F. 3d 492, 499(5th Cir. 1999).

*Non-Exertional Impairments:*

Impairments that remain constant at all levels of exertion form an important part of residual functional capacity.  These impairments are called non-exertional

impairments, because the claimant suffers these impairments constantly, whether or not he exerts himself.  Allergies are non-exertional impairments, and may be severe. Intolerance to stress may also be a non-exertional impairment.  Side effects from medications have also been included in consideration as non-exertional impairments. Pain can be a non-exertional impairment when it exists whether or not the claimant is exerting himself in physical activities.

## ANALYSIS AND DISCUSSION

*The Administrative Record:*

While Archangel has consistently reported that he has been unable to work due to back/leg pain since December 18, 2001, there is no detail in the record of the event(s) which led to the alleged disabling condition although some medical records include history related by the patient that he injured his back while in the military. However, the record indicates that Archangel maintained gainful employment over the years after his discharge from military service in 1986 until the December, 2001 alleged onset date of disability.

The earliest records of evaluations of Archangel by physicians and mental health professionals for purposes of his disability applications indicate that:

a. Archangel suffered an injury to his head and *right* ear in an auto accident, resulting in surgery to reconnect the ear. [Tr. 176] Auditory testing indicated moderate to severe decreased auditory acumen in the *left* ear. [Tr. 173, 177]

-11-

b. On physical examination by Dr. Harold Heitkamp on August 12, 2003, Archangel was described as a well developed, well nourished 39 year old male, with 20/20 vision, who walked with a normal gait. [Tr. 177] His lungs were clear; his heart was normal, and he had good strength and range of motion of the neck and shoulders. He had good hand strength, grasping ability, dexterity and normal sensation. [Tr. 178]

c. Physical examination and X-Ray review resulted in the documentation of impressions of minimal facet disease at L4-L5 bilaterally, Smorl's nodes and spondylosis of S-1 posteriorly.  Because of complaints of moderate radiculopathy in the left leg, herniated disc at L4, L5 or L5-S1 should be ruled out, and an MRI was scheduled.  Per Dr. Heitkamp, "*with his findings he can do anything in the seated position.  No lifting over 20 to 30 lbs occasionally and 10 to 15 repetitively.  No squatting, bending, crawling, creeping.  I feel he could do some work in the sedentary position.*"  [Tr. 178-179]

c. During the physical examination, Archangel admitted to consuming about 2 quarts of vodka on weekends. [Tr. 177]

d. Dr. Naomi Friedberg, Ph.D. conducted a Mental Status Examination on Archangel on October 27, 2003.  She noted completely intelligible speech, without language impairments, and she found Archangel to be cooperative, alert, concentrating well and persisting well in  pace  through the interview process. She found his thought processes were generally logical and coherent, and he was oriented in all spheres.  His affect was depressed and flat.[Tr. 180, 182] He admitted to excessive alcohol use, but did not appear to be especially bothered about it.  Dr. Friedberg found Archangel's reported symptoms and history to be inconsistent with  the information appearing in his VA records  regarding anger management  and violent outbursts. [Tr. 181] She recorded diagnostic impressions of major depressive disorder, moderate to severe, with possible psychosis; alcohol abuse, possible dependence.  She noted that "*[D]ue to his current depression and lack of mental health treatment, he may have difficulty in remembering and carrying out detailed instruction, and would have some difficulty performing and sustaining effort at a normal pace over a forty hour workweek.*" [Tr. 182]

During 2004, Archangel's physical and mental conditions remained relatively

unchanged.  MRI of the lumbar spine in November, 2004 revealed normal alignment

and disc height with desiccation at L5-S1; no significant neural foraminal or spinal canal stenosis; mild bulge at L4-5 and diffuse posterior disc bulge at L5-S1. [Tr. 274] A psychiatric evaluation by Dr. Bettina Fitzgerald in December, 2004 resulted in a provisional diagnosis of depression. [Tr. 251] Records from January, 2005 documented Archangel's use of a cane, and his complaints of sleeplessness and anger. Diagnosis was recorded to include adjustment disorder with depressed mood, alcohol abuse, back pain, asthma, and chronic illness.   [Tr. 254-256] Archangel acknowledged drinking heavily on weekends. [Tr. 269] He indicated he was not interested in chemical dependency treatment, and he was considered a poor candidate for psychotherapy. [Tr. 270, 312]

During 2005, records indicate that Archangel missed several scheduled appointments, calling in for pain medication refills.  He was often away from his residence when calls were made from his treatment providers. [Tr. 318, 329-331]

On August 8, 2005, a psychological evaluation report was rendered by Dr. Henry LaGarde, Ph.D., on referral by the Disability Determinations Services.  [Tr. 276]  Per Dr. LaGarde, Archangel has a history of significant substance abuse and dependence.  Nevertheless, "*[H]e has the capacity to attend for a two hour block of time to a simple repetitive task. ...ability to maintain persistence and consistency at a routine task during the course of a forty hour work week, but that ability is*

-13-

*compromised by significant substance abuse dependency.*"  "*He would probably be able to, for example, interact effectively with supervisors and co-workers if he were not battling alcohol and drug dependency.*" [Tr. 279]  If the claimant was totally abstinent from alcohol and/or substance use/abuse, Dr. LaGarde opined that he would have "no problems regarding work capacity and ability to maintain appropriate social relationships." [Tr. 284]

In September, 2005, Dr. Raymond F. Taylor performed a medical examination of Archangel, including a review of medical records from the Veteran's Administration. [Tr. 287] The musculoskeletal examination was recorded as normal except for swelling over the left paravertebral area and right sacroiliac and sacrosciatic notch tenderness.  The neurological exam was normal.  Diagnoses were recorded as chronic low back pain probably secondary to spondylosis, history of asthma, history of depression and chronic alcoholism. [Tr. 290] At the time of the evaluation, Archangel reported he drank 2-3 six packs of beer on weekends. [Tr. 291] Dr. Taylor opined that the claimant "*should do no lifting or carrying of objects over 50 lbs.  He should not perform work related activities requiring frequent lifting or carrying of objects over 25 lbs.  He may stand or walk for at least 6 hours out of an 8 hour day.  He should not perform work related activities requiring frequent bending stooping or crouching.*" [Tr. 291]

-14-

In January, 2006, Archangel was hospitalized after he threatened to harm his attorney, police, a vocational rehabilitation expert, and the ALJ who had denied him Social Security benefits.  He was positive for cocaine on his admit to the hospital. [Tr. 417, 432-434, 455]   Diagnoses were recorded as alcohol intoxication, alcohol dependence, cocaine dependence, substance-induced mood disorder, r/o antisocial personality disorder; hypertension, hypercholesterolemia, chronic low back pain, asthma, and hearing loss in left ear. [Tr. 434-435] Nursing notes from January 23, 2006 suggest that Archangel "appears to be malingering." [Tr. 437]  Records from mid -April, 2006 indicate that Archangel continued to drink after his hospitalization. [Tr. 406]  However, other records suggest that Archangel stopped all alcohol and drug use in February, 2006.

Repeat MRIs of Archangel's lumbar spine were done in the summer of 2006. They were interpreted by Dr. Erik Askenasy, who noted normal alignment of the LS spine; minor disk bulge at L5-S1, without canal stenosis or foraminal stenosis.  Per Dr. Askenasy, "Patient with symptoms of intrinsic back pain not amenable to surgery. No need for neurosurgical intervention at this time.   Recommend conservative therapy." [Tr. 393] As of August 3, 2006, Dr. Bettina Fitzgerald(psychiatrist) was advising Archangel to seek employment that does not involve bending and lifting." [Tr. 393]

Psychiatry notes from an interview with Archangel on September 21, 2006 indicate that Archangel quit using alcohol and cocaine as of February, 2006 and was attending AA meetings regularly. [Tr. 381] He was taking his medications as prescribed, but he reported he still had some problems with sleep and depression. His diagnoses were changed to alcohol dependence, in early remission, cocaine dependence, in early remission, major depressive disorder, recurrent, moderate, COPD/Asthma, chronic pain, hearing loss in left ear, allergies. GAF scores[2] for the year and currently were recorded at 61. [Tr. 382]

From October, 2006 through June, 2007, Archangel was offered pain management treatment and therapies. He was prescribed a TENS unit and referred for physical therapy and vocational rehabilitation services. [Tr. 368, 377] Pelvic traction was offered and provided some relief for the claimant's back pain complaints, and he was considered to have "good rehab potential." [Tr. 567] Archangel was not consistent with treatment sessions, however, missing multiple medical appointments. He asked to be discharged from physical therapy. [Tr. 660, 664, 669] By mid July,

---

[2]The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." A GAF score of 51-60 indicates "moderate symptoms," or "moderate difficulty in social or occupational functioning." A GAF score of 41-50 indicates "[s]erious symptoms...[or]serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3(10th Cir. 2004)(quoting American Psychiatric Association, diagnostic and Statistical Manual of Mental Disorders 32, 34(Text Revision 4th ed. 2000)).

2007, Archangel was cautioned about over-medicating himself, and he asked if he could have surgery for his back pain. [Tr. 668] He missed appointments in August, 2007. [Tr. 663]

A repeat MRI was done in October, 2007, and findings were correlated to the 2006 MRI report. Impression was of mild facet joint hypertrophy at L4-5 and mild central disc bulge at L5-S1 without evidence of central canal or neural foraminal stenosis. Findings were noted to be similar to the 2006 findings. [Tr. 662]

In September, 2007, Archangel was involved in a street fight after he quit taking his medications. He was involved in a second fight in May, 2008, and he was placed on probation until 2010. [Tr. 591] By September, 2008, with a court date pending related to the fight incidents, Archangel reported during a psychological assessment visit that he faced incarceration if convicted. He requested psychological testing for personality disorder and for a letter for his parole officer. [Tr. 608, 610] Based on his reports of psychotic symptoms without depressive symptoms, his diagnosis was changed to schizoaffective disorder, currently depressed and psychotic, alcohol dependence, in remission since 2/2006, cocaine dependence, in remission since 2/2006, antisocial personality traits, left eye injury from trauma in 5/2008, COPD/asthma, chronic pain, hypertension, hearing loss in left ear, and allergies. [Tr. 608]

By January, 2009, Archangel agreed to try physical therapy again.  He was advised not to take Lortab daily to avoid tolerance to the drug.  He requested Levitra for erections, and he complained of blurred vision, which his physician noted was likely due to his numerous psychotropic  medications and his age. [Tr. 583] The claimant was told he would benefit from a weight management program, but he was not interested. [Tr. 587] By February, 2009, while his physician  noted his rehab potential as "good," Archangel declined outpatient physical therapy. [Tr. 577] Primary care exam notes from July 21, 2009 recorded Archangel's complaints of heartburn.  Notes indicate the claimant "does not appear ill, ...no distress.  Has a cane but he carries it most of the time." [Tr. 569]

As of January 20, 2010, Archangel described his condition as "Leg get weak, medication put me to sleep.  Can't lift anything.  Note: Mr. Archangel can no longer drive due to leg pain, numbness and weakness." [Tr. 10]

*The Administrative Hearing:*

The administrative hearing commenced before ALJ Ronald Burton on September 1, 2009; it was not the first of such hearings.  However, the transcript of the 2009 hearing is the only transcript of testimony available for review.  Per the record, it is understood that the recording of the 2007 hearing involving this claim was lost. [Tr. 672] Also, as of the hearing date, the medical record was incomplete,

-18-

including records dating to 2007 only. [Tr. 672] Thus, the live testimony given by the medical expert and the vocational rehabilitation expert witnesses was based upon the witnesses' review of a limited record, with the ALJ acknowledging that fact repeatedly on the record. [Tr. 672, 676, 679, 687, 697, 699]  It is in that context that the testimony was considered.

Archangel testified without legal representation. He recited his educational background, military service record and summarized his work history in response to the questions of the ALJ, confirming that he has not worked since December, 2001. [Tr. 674] He presented a "mobility impaired ID card" which was issued to him in April, 2009, since his last appearance before the ALJ.  He described his continued use of a cane and his continuing treatment through the VA for medication. [Tr. 676] He described a period of physical therapy treatment in Pineville and Lafayette, and continuing visits with a psychiatrist.  He continues to attend AA meetings. [Tr. 676-677] He presented his most  recent lab work for review by the ALJ, which results were negative,  and he indicated that he was taking "about 22 different pills" at the time of the hearing. [Tr. 677-678] In response to questions, he declared that he had not been hospitalized overnight in the past couple of years. [Tr. 678] He recognized that he does better as long as he is off of alcohol. [Tr. 678-679]

Archangel responded to questions by the ALJ and the vocational expert about his past work history. [Tr. 680-682] He testified that his current health problems would prevent him from returning to any of his former jobs.  When asked what problems would interfere with his resuming former work, he indicated that his legs get numb when his sits too long, and he can no longer do heavy lifting. [Tr. 680] He has pain if he sits or stands too long. [Tr. 681] He also described transportation difficulties and issues with people aggravating him. [Tr. 694]

Thomas Stigall, M.D. testified as a medical expert. He reviewed and summarized medical records spanning the years from 2003 to 2007, most of which were from the VA.  He noted that "we don't have anything very current with respect to mental impairments." [Tr. 683]  The most recent records available to him included the claimant's hospitalization in January, 2006,  records which referenced that the claimant has been substance-free since February, 2006, and the opinion documented by treatment providers that major depressive disorder, recurrent, and moderate- rather than substance induced-mood   disorder  was  considered  the  more  appropriate diagnosis for Archangel at the time. [Tr. 685]  The GAF score of 61, noted in the record was explained by Stigall to suggest mild symptoms or impairment. [Tr. 685] The score was compared with the GAF score of 60, noted in Archangel's discharge notes from January, 2006, when he was still using alcohol and cocaine, and Stigell

-20-

indicated the score would be at the "upper limits of the moderate range of impairment." [Tr. 686] He also cited records from 2005, noted to be "quite dated" by the expert. They included a report from a clinical psychologist(Dr. Henry LaGarde), who diagnosed a depressive disorder, single episode, cocaine dependence, alcohol dependence, and a GAF score of 55, again interpreted by Stigell to be within the range of moderate symptoms and impairment. [Tr. 686] In considering other records of an evaluation by Dr. Raymond Taylor, Stigell noted restrictions on physical activity, primarily because of the claimant's back problems. [Tr. 687]

In responding to questions by the ALJ regarding Archangel's condition and abilities/limitations at the present time, Stigell was asked if he was able to "sort out issues of, of mental illness aside from and distinct from substance abuse?" Stigell acknowledged that the records he has reviewed raised the issue "whether the mood disorder was a major depressive disorder or was a substance induced mood disorder." [Tr. 688] In forming the opinions and drawing the conclusion expressed in his testimony, Stigell conceded he had to make assumptions about continued abstinence and sobriety, treatment compliance and current functioning in daily living. [Tr. 688] He further assumed that since 2007, there have been no "episodes of decompensation." [Tr. 689]

-21-

William Stampley  testified as a vocational rehabilitation expert.  Stampley reviewed Archangel's work history, and,  considering his past relevant work Stampley found all positions held to be medium to heavy, unskilled and semi-skilled work. [Tr. 682-683] None of the prior work done by Archangel had skills which would be transferrable to light or sedentary jobs, since, by definition, there are no skills associated with that work. [Tr. 683]

Stampley offered the following opinions: (1) Based on the physical restrictions on the claimant's activities appearing in the available record,  any medium level jobs would be excluded from consideration [Tr. 690]; (2) those physical restrictions would prevent Archangel from returning to any of his former jobs [Tr. 691]; and (3) the physical restrictions would have little or no effect regarding light or sedentary jobs. [Tr. 691]

The ALJ asked Stampley to add to his considerations further restrictions of independent work, "working primarily with process rather than with people," and Stampley described jobs in the light and sedentary ranges which would fit those restrictions.  He clarified that such jobs are more limited, "because of the not working with people." [Tr. 692-693]   Included in Stampley's descriptions of potential available jobs fitting the claimant's physical and 'non-exertional' restrictions, as posed in the hypothetical questions of the ALJ, Stampley included small products

-22-

assembler, cleaner/housekeeping, final assembler, and addresser as jobs which fit Archangel's restrictions and which are available in the national and state economy. [Tr. 693]

At the close of the hearing, the claimant was offered a final opportunity to add testimony or respond to things discussed during the hearing.  He had nothing to add. [Tr. 697-698] It was understood that additional records would be collected and reviewed by the ALJ prior to the issuance of a decision. [Tr. 699] There is no indication in the record to suggest that the designated expert witnesses would perform any further records review or make any further analyses.

As discussed above, this Court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021(5th Cir. 1990).  It is well-settled that the Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818(5th Cir. 1986).  In the instant case, the claimant asserts that the Administrative Law Judge did  not consider his non-exertional impairments.[3]  Accordingly, says Archangel, the decision is not supported

---

[3]The appellant's brief references 'emotional problems,' reported auditory hallucinations, use of a cane, 'restrictions due to asthma and COPD,' and limitations associated with the claimant's history of substance abuse. [Rec. Doc. 9, p. 7] While the record contains some reference to these symptoms/conditions as reported by the claimant,  there are no indications of medical restrictions

by the evidence. [Rec. Doc. 9, p. 3] The record, however, demonstrates that the ALJ did consider the claimant's 'non-exertional' mental health issues, including his claimed resistance to being around people and his articulation of that reason for his inability to be employed.  The record includes the ALJ's references to those issues and limitations in his questioning of expert witnesses and his review of the claimant's medical history, including the effort to separate alcohol/drug use factors from other mental health issues. [Tr. 688] The ALJ determination makes multiple references to confirm that non-exertional factors were considered in the determination, including the claimant's alleged hearing/vision issues, his blood pressure and depression-which had "relatively benign effects on functioning." [Tr. 20] The determination also evidences the ALJ's awareness and consideration of the claimant's apparent non-compliance with treatment relative to those impairments. [Tr. 19]  On that basis, the undersigned cannot conclude that the ALJ failed to base his determination on substantial evidence, that is evidence which is more than a mere scintilla and less than a preponderance.  *Boyd v. Apfel,* 239 F.3d  at 704.

The record also demonstrates that the ALJ followed the requisite five step sequence in analyzing the claims of Archangel.  At step one, he determined that the claimant has not engaged in substantial gainful activity at any time relevant to his

---

or physician/therapist-imposed limitations from the conditions.

decision. [Tr. 17] At step two, he determined that the claimant's polysubstance abuse disorder significantly limited his ability to perform basic work activities. [Tr. 17] At step three, he considered the alleged impairment(s) identified by the claimant and the impairments documented by treating and evaluating professionals. He conferred with expert witnesses in his consideration of the question whether the claimant's impairments as documented meet or equal the severity of impairments listed in 20 C.F.R., Part 404, Subpart B, Appendix 1, and he drew conclusions regarding the claimant's inability to return to his past employment positions. He arrived at the residual functional capacity for the claimant, including lifting, bending, standing/walking and other restrictions associated with the claimant's degenerative back impairment, and he found that up until February, 2006, the claimant was unable to hold a job due to issues with reliability and dependability stemming from substance abuse. [Tr. 21] Finally, at step five, the ALJ determined that since the claimant stopped abusing alcohol and drugs in February, 2006, he continues to have the physical restrictions documented by his doctors for years, but even with those restrictions, based upon the claimant's age, education and experience, he is capable of performing other work in the national economy. At step five, whether the claimant is prevented by his impairments from doing other work, the ALJ posed appropriate hypothetical questions to the expert witnesses.

The claimant raises the issue of the use of vocational expert testimony by the ALJ in reaching his determination, asserting that once the ALJ determines that a claimant suffers from a non-exertional mental impairment, the Commissioner must produce VE testimony or other similar evidence to establish that significant jobs exist.   The claimant asserts that "[I]n this case, there was Vocational Expert testimony, however there was no reliance on this testimony." [Rec. Doc. 9, p. 6] While it is true that in this case the ALJ found that "[B]ecause this claimant is able to perform substantially all activities in the category of light work, VE testimony is not necessary,"[Tr. 24] the record nevertheless demonstrates that the ALJ solicited detailed testimony from the vocational expert William Stampley relative to available jobs in the national and state economy which are within the claimant's restrictive range of light/sedentary work, including the posing of hypothetical questions regarding the claimant's 'aggravation' around people and restrictions associated with that claimed non-exertional impairment-the only non-exertional impairment referenced by the claimant at the hearing. [Tr. 681-683, 690-694] The record contains remarkably little information about the claimed impairments, and the undersigned finds no reference to any restrictions by doctors or mental health professionals relative to the conditions referenced by the claimant(asthma/COPD, auditory hallucinations, use of a cane, substance abuse, in remission).   The only 'restriction'

-26-

claimed by Archangel relative to emotional distress was his assertion that he does not like to be around people, and that restriction was consider by the ALJ in his questioning of the vocational expert.

The Fifth Circuit has held that an ALJ need only incorporate into the hypothetical questions posed to a vocational expert those claimed disabilities that are supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273(5th Cir. 2002); *Bowling v. Shalala*, 36 F.3d 431, 436(5th Cir. 1994).

## CONCLUSION AND RECOMMENDATION

_____After a careful review of the complete record, it is clear the ALJ and the designated expert witnesses had access to the treatment records of the claimant during the time of his admitted alcohol and substance use/abuse.  The claimant has not disputed the content of those records or the duration or extent of his substance use/abuse.  Medical opinions in the record support the conclusion that during the time of the claimant's substance abuse, and as a result of that abuse, he was unable to sustain employment. The claimant acknowledged that since he stopped using alcohol and drugs, he has improved, and, although the claimant continues to carry diagnoses related to depression and anti-social behavior, the conditions are no longer documented as 'severe.' [Tr. 608]  Based on this record, the undersigned finds that the ALJ's  conclusion that alcohol and drug abuse were  contributing factors material

-27-

to the determination that Archangel was disabled from 2003 to February, 2006 is supported by substantial evidence.

As to the time period beyond February 2006(when the claimant ceased all alcohol/substance use), although the medical records covering the claimant's evaluation and treatment from 2007 to the date of the subject hearing were not available for review by the medical experts who testified at the hearing, the records were reviewed by the ALJ after the hearing. They included records of treating physicians and therapists.  Those records contain substantial evidence that the claimant could be employed in positions identified as light to sedentary, including positions which involve limited contact with others.  Although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight. *Martinez v. Chater*, 64 F.3d 172, 175-176(5th Cir. 2995), *citing Greenspan v. Shalala*, 38 F.3d 232, 237(5th Cir. 1994), cert denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871(1995).  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with...other substantial evidence." 20 CFR §404.1527(d)(2).  Further, "the ALJ has sole responsibility for determining a claimant's disability status."

-28-

*Martinez*, 64 F.3d at 176, *citing Moore v. Sullivan*, 919 F.2d 901, 905(5th Cir. 1990). There is nothing to suggest the ALJ erred in his analysis.

Accordingly, **IT IS RECOMMENDED** decision of the Commissioner be affirmed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 8th

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)